b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| ALBERT FISHER, Appellant | CIVIL DOCKET NO. 1:20-CV-00410 |
| VERSUS | DISTRICT JUDGE DRELL |
| U.S. COMMISSIONER OF SOCIAL SECURITY, Appellee | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Appellant Albert Fisher ("Fisher") filed an appeal from the denial of his applications for Social Security benefits. Because substantial evidence supports the ALJ's/Commissioner's finding that Fisher could perform some light work, and therefore was not disabled from May 26, 2016 through July 9, 2019, Fisher's appeal should be DENIED.

I.  Background

  A.  Procedural Background

Fisher filed prior applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on March 2, 2015, alleging a disability onset date of January 5, 2015, that were denied on May 31, 2016. ECF No. 18-1 at 37- 46.

Fisher filed his current claims for DIB and SSI on July 25, 2017 (protective filing date-June 27, 2017), alleging a disability onset date of May 26, 2016 (ECF No.

18-1 at 169, 176) due to stroke, seizures, high blood pressure, and head injury (ECF No. 18-1 at 87-88, 205).

A hearing was held before an administrate law judge ("ALJ"), at which Fisher appeared with his attorney and a vocational expert ("VE"). ECF No. 18-1 at 52. The ALJ found that, although Fisher suffers from cervical degenerative disc disease, left knee osteoarthritis, colon adenocarcinoma, scalp hematoma, headache, hypertension, and history of seizure, he has the residual functional capacity to perform a limited range of light work. ECF No. 18-1 at 24, 28. The ALJ concluded that, because there are jobs that exist in significant numbers in the national economy that Fisher can do–such as price marker, fitting room attendant, and housekeeper–he was not disabled at any time from May 26, 2016 (the alleged onset date) through the date of his decision on April 9, 2019. ECF No. 18-1 at 29.

Fisher requested a review of the ALJ's decision, but the Appeals Council declined to review it. ECF No. 18-1 at 9. The ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Fisher next filed this appeal for judicial review of the Commissioner's final decision. ECF No. 21. Fisher simply contends in his appeal that, since 2014, he has had 3 seizures, a stroke, and cancer, and that he has been forced to stop working and is now homeless. ECF No. 21. Fisher alleges the SSA in Falls Church, Virginia sent him a letter, stating it had "found stuff" that was new and had not previously been presented to the SSA, and that it could mean "more money." ECF No. 21.

B. Factual Background

1. Medical Records

Fisher was seen in the Natchitoches Regional Medical Center in January 2015 for syncope and collapse, facial laceration, alcohol abuse, and multiple rib fractures. ECF No. 18-1 at 272, 278. Fisher's blood pressure was 166/93, he was 5'8" tall, and he weighed 200 pounds. ECF No. 18-1 at 272-73. A CT scan of his head did not reveal an acute intracranial abnormality. ECF No. 18-1 at 472. An x-ray of his chest showed asymmetric inflation of his lungs. ECF No. 18-1 at 473. Fisher was diagnosed with non-epileptic seizures, and prescribed ibuprofen and azithromycin. ECF No. 18-1 at 278-79.

Fisher was seen at H.P. Long Medical Center on July 22, 2015. ECF No. 18-1 at 267. Fisher was 5'6" tall and weighed 154 pounds; his sitting blood pressure was 142/87; and he was noted to be a non-smoker. ECF No. 18-1 at 267-68. Fisher was released to return to work, but was told not to drive until he was released by neurology. ECF No. 18-1 at 267. Fisher was diagnosed with essential hypertension (benign) and unspecified epilepsy, and was referred to neurology. ECF No. 19-1 at 267.

In May 2016, Fisher was evaluated by Dr. Venkat Raghav Aachi at University Health. ECF No. 18-1 at 288. Dr. Aachi found Fisher was 51 years old with a history of hypertension, a reported cerebrovascular accident ("CVA"), and seizures in January 2015, but no seizures since. ECF No. 18-1 at 288. Fisher

reported sharp headaches since January 2015, about 3 per week lasting about 3-4 hours, located at the top of the head, usually relieved by extra strength Tylenol. ECF No. 18-1 at 288. Fisher's blood pressure was 140/94, and he was 5'6" tall and weighed 164 pounds. ECF No. 18-1 at 288. Fisher denied smoking or using drugs or alcohol. ECF No. 18-1 at 288. Fisher's motor exam, strength, sensations, coordination, and fait were normal. ECF No. 18-1 at 289.

Dr. Aachi did not find any residual neurological deficits after the CVA and seizures. ECF No. 18-1 at 289. Dr. Aachi diagnosed convulsions (unspecified type), history of CVA (cerebrovascular accident), and a history of transient ischemic attacks and cerebral infarction without residual deficits. ECF No. 18-1 at 294. Dr. Aachi scheduled an EEG and an MRI of Fisher's brain. ECF No. 18-1 at 289. Dr. Aachi told Fisher to: avoid heights and refrain from handling heavy machinery; stay away from hot stoves; have a life jacket when near water bodies; refrain from driving; avoid lying in bathtubs; avoid sharp objects; remove or pad sharp items such as corners or furniture; and wear a medical identification bracelet. ECF No. 18-1 at 289.

In July 2016, Fisher underwent an EEG and an MRI. Dr. Robert N. Schwendimann, a neurologist, found the EEG was normal, but noted that a normal EEG cannot exclude the possibility of seizures. ECF No. 18-1 at 291. Dr. Eduardo Cesar Gonzalez-Toledo evaluated the brain MRI and found nothing abnormal or remarkable. ECF No. 18-1 at 294.

In September 2016, Fisher reported eye pain after he was hit in the face with a ball while he was sleeping. ECF No. 18-1 at 339. Because Fisher was intoxicated at the time, he did not awaken when injured, but his family told him what had happened. ECF No. 18-1 at 339, 460. Fisher was diagnosed with a headache, hypertension, and alcohol dependence, and was advised to drink less alcohol. ECF No. 18-1 at 340.

In November 2016, Fisher had been out of medication for two weeks and his blood pressure was 113/72. ECF No. 18-1 at 342, 458. Fisher was 5' 6.5" tall and weighed 145 pounds. ECF No. 18-1 at 342. Fisher was diagnosed with essential hypertension. ECF No. 18-1 at 343. Fisher was prescribed hydrochlorothiazide ("HCTZ"). ECF No. 18-1 at 345. It was noted that Fisher did not check his blood pressure at home and his compliance with medication had been only fair—he skipped some medication doses. ECF No. 18-1 at 458. A week later, Fisher's blood pressure was 166/85. ECF No. 18-1 at 455.

In January 2017, Dr. Laxmi Kokatnur evaluated Fisher. ECF No. 18-1 at 292. Dr. Kokatnur noted that Fisher's last seizure was in January 2015, and he had an unremarkable brain MRI and a normal EEG in July 2016. ECF No. 18-1 at 292. Fisher's blood pressure was 195/73, his height was 5'6", and he weighed 157 pounds. ECF No. 18-1 at 292. Fisher's motor, senses, reflexes, gait, and coordination were all normal. ECF No. 18-1 at 292. Dr. Kokatnur diagnosed a well-controlled seizure disorder and a history of a CVA in 2015. Dr. Kokatnur instructed

Fisher to not drive until he had at least 6 months free of seizures and was cleared by the neurologist. He also told Fisher to avoid: heights and climbing ladders; swimming without a life jacket or attendant; and hot surfaces. ECF No. 18-1 at 292.

In April 2017, Fisher was a back-seat passenger in a vehicle that was rear-ended. ECF No. 18-1 at 318. Fisher started hurting about three hours later, complaining of low back and neck pain. ECF No. 18-1 at 318. Fisher had a full range of motion in his neck, extremities, and back, without tenderness. ECF No. 18-1 at 322. X-rays of Fisher's cervical spine showed only some degenerative changes. ECF No. 18-1 at 327.

On May 2, 2017, Fisher complained of a headache with nausea for three weeks. ECF No. 18-1 at 312. A CT scan of his head did not show any abnormalities. ECF No. 18-1 at 315, 317. Fisher was diagnosed with a headache and instructed to increase his fluid intake, rest, and take Tylenol. ECF No. 19-1 at 316.

On May 5, 2017, Fisher fell and struck his head. ECF No. 18-1 at 300, 311. Fisher was noted to be a 52-year-old chronic alcoholic in a highly intoxicated state. ECF No. 18-1 at 300. Fisher had a 5-6 cm. laceration on his scalp that required 7 staples. ECF No. 18-1 at 300, 303. Fisher admitted that he had a headache. ECF No. 18-1 at 301. A CT scan of his head was normal aside from the laceration with hematoma. ECF No. 18-1 at 304, 355, 474. A CT scan of his cervical spine showed

6

degenerative changes but no acute fracture or subluxation. ECF No. 18-1 at 305, 356, 475. Fisher's drug screens were all negative, but he had a toxic alcohol level. ECF No. 18-1 at 307-09, 361, 487.

In July 2017, Fisher admitted to drinking about 24 ounces of alcohol on a "regular basis." ECF No. 18-1 at 334. Fisher was 5' 6.5" tall and weighed 155 pounds. ECF No. 18-1 at 337. Fisher was noted to be taking medication to control his blood pressure, and was advised to reduce his alcohol consumption. ECF No. 18-1 at 336-37.

In August 2017, Fisher's blood pressure was 160/89, he was diagnosed with essential hypertension, and his HCTZ was increased. ECF No. 18-1 at 514. Fisher subsequently had a positive screening for colorectal cancer. ECF No. 18-1 at 449-50, 516.

In September 2017, Fisher's blood pressure was 116/70. ECF No. 18-1 at 519.

In October 2017, Fisher had arm pain and was diagnosed with shoulder impingement syndrome due to overuse and strain. ECF No. 18-1 at 523.

In November 2017, Fisher's blood pressure was 146/82. ECF No. 18-1 at 525.

X-rays of Fisher's cervical spine in March 2018 showed degenerative disc disease of the lower cervical spine. ECF NO. 18-1 at 503. X-rays of one knee showed medial compartment osteoarthritis. ECF No. 18-1 at 505-06.

In February 2018, Fisher reported occasional bilateral arm tingling, mostly in the left arm, and chronic intermittent left knee pain. ECF No. 18-1 at 528. His

7

blood pressure was 108/69. ECF No. 18-1 at 528. Fisher was diagnosed with essential hypertension, arm neuralgia, and knee pain. ECF No. 18-1 at 529.

In April 2018, a colonoscopy revealed a polyp positive for sigmoid adenocarcinoma. ECF 18-1 at 362, 378, 387, 399, 422. A CT scan of Fisher's chest did not show any metastatic disease. ECF No. 18-1 at 397. A second colonoscopy in May 2018 was normal. ECF No. 18-1 at 423-24. However, because the site of the malignant polyp was not tattooed when the polyp was removed during the first colonoscopy, the site was not found again during the second colonoscopy. ECF No. 18-1 at 408, 414. Fisher was scheduled for a repeat colonoscopy and PET scan in six months (November 2018). ECF No. 18-1 at 417-18, 547

In September 2018, Fisher's elevated liver enzymes were noted, "likely due to alcoholism." ECF No. 18-1 at 552. Fisher's bloodwork was also abnormal. ECF No. 18-1 at 556-58.

In January 2019, Fisher underwent a Free T4 test that showed abnormal thyroid findings and a TSH that was an abnormal thyroid function study. ECF No. 18-1 at 559. A PSA for prostate cancer showed only nocturia (frequent need to urinate at night). ECF No. 18-1 at 559.

### 2. January 2019 Administrative Hearing

At the January 10, 2019 administrative hearing, Fisher testified that, in 2014, he was working for a chemical company called "ABA," and he had collapsed at home. ECF No. 18-1 at 58. He testified he had three seizures and a stroke. ECF

No. 18-1 at 58-59. He then obtained permission to return to work. ECF No. 18-1 at 59.

However, Fisher testified he cannot work because of "my legs, my back, and my neck"–he is "handicap" and hurting. ECF No. 18-1 at 59-60. Fisher also takes pills for high blood pressure. ECF No. 18-1 at 60. Due to his stroke, Fisher: forgets things; gets angry; is argumentative; has migraines; has difficulty raising his right arm (he is right-handed); and has trouble with his left leg and left side. ECF No. 18-1 at 62-64. Fisher testified that he did not suffer from headaches before his stroke. ECF No. 18-1 at 62.

Fisher testified that he has also been diagnosed with cancer and has a new prostate issue that he claims is prostate cancer. ECF No. 18-1 at 64-65. Fisher testified that Dr. Grimes from LSU-Shreveport took out "three polyps" and one was positive for cancer. ECF No. 18-1 at 66. Fisher was unable to describe the procedure but stated they did not have to cut him. ECF No. 18-1 at 67. When asked how it affected his abilities to do things, he testified he is "handicap." ECF No. 18-1 at 68.

Fisher testified he can lift and carry things up to 20 to 30 pounds. ECF No. 18-1 at 68. He can stand for about 15 minutes, and can walk for about 15 to 30 minutes (to his mailbox and back). ECF No. 18-1 at 69.

When asked how he gets along with people, Fisher testified he has been in jail for disturbing the peace. ECF No. 18-1 at 70. He then testified he's been to jail

about five times, "but they don't keep [him] because [he] work[s] all the time." ECF No. 18-1 at 70. He testified he has been "on the streets for five years" and is homeless. ECF No. 18-1 at 70-71. When brought back to the question of whether he got along with people, he stated "[t]hey try to get me for – they want my Social Security number, so if something happen[sic] to me, if I was to die or something they'll get my money." ECF No. 18-1 at 71.

He continued to talk over his attorney's questioning and not respond directly to the questions asked. His attorney asked if he could stay on task, complete tasks, and pay attention to things. ECF No. 18-1 at 71. Fisher testified that when he went in front of the judge, "[h]e going to say, he can't – he can't work or drive the forklift and he can't work the machines, but he could be a kitchen helper." ECF No. 18-1 at 71. When asked if he could wash dishes, Fisher stated:

> At my house. I have to clean up or they'll put you out. I don't even have a house. I can't do nothing. He told me, the ADA – I want you to test my blood again. I got to go. Because I'm going to sue him, they done got me for asbestos and all this. They say I can't drive a forklift. That's what I was doing.

ECF No. 18-1 at 71. Fisher's attorney then stated to the ALJ that he had no further questions, as he was not getting anywhere and Fisher was rambling. ECF No. 18-1 at 72.

The ALJ then questioned Fisher. ECF No. 18-1 at 73. Fisher testified he graduated high school. ECF No. 18-1 at 73. Fisher stated he worked for about nine

10

months in 2017 as a laborer, and that he "built the generator in Winnfield." ECF No. 18-1 at 73.

The ALJ told the VE he was not going to classify Fisher's past work at that time. ECF No. 18-1 at 76. The ALJ then posed a hypothetical to the VE, involving an individual with Fisher's age, education, and work experience who can: perform light work; occasionally kneel, stoop, crouch, and crawl; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; and never be exposed to unprotected heights or dangerous machinery. ECF No. 18-1 at 76. The ALJ also stated the individual was limited to unskilled work, as defined by the Dictionary of Occupational Titles ("DOT"), with few or no changes in a routine work setting, and only occasional interaction with the general public, co-workers, and supervisors. ECF No. 18-1 at 76.

The VE testified there are jobs in the national economy that such an individual can perform, such as: (1) price marker, DOT 209.587-034–SVP level 2, light work (273,000 jobs in the national economy); (2) fitting attendant, DOT 299.677-010–SVP level 2, light work (241,000 jobs in the national economy); and (3) housekeeper, DOT 323.687-014–SVP level 2, light work (136,000 jobs in the national economy). ECF No. 18-1 at 77.

The ALJ posed a second hypothetical, assuming the individual would be off-task at least 20% of the workday. ECF No. 18-1 at 77. The VE testified that such an individual could not maintain employment in the national economy. ECF No.

18-1 at 77. The VE explained that the DOT does not address the issue of off-task, so his response was based on his education and experience. ECF No. 18-1 at 77.

The ALJ then posed a third hypothetical, adding that, instead of off-task, the individual would need at least two additional breaks, each of a 15-minute duration during the workday. ECF No. 18-1 at 77. The VE again testified that the individual could not maintain employment, and that his response was not based on the DOT, but on education and experience. ECF No. 18-1 at 77.

Fisher's attorney asked the VE to assume the same hypothetical individual, with the additional qualifications: that his emotional state or condition more than moderately limited his ability to accept instructions and respond appropriately to criticism from supervisors; and the individual would occasionally respond inappropriately to criticism from supervisors. ECF No. 18-1 at 78. The VE testified the individual would not be able to sustain competitive employment. ECF No. 18-1 at 78. The VE explained that if the individual was not able to accept criticism or adhere to instructions for up to a third of the day, then that person could not maintain employment. ECF No. 18-1 at 78.

Fisher's attorney asked the VE to assume the hypothetical individual was unable to get along with co-workers without distracting them, moderately limited – meaning the individual would occasionally exhibit behavior that causes co-workers to become distracted, resulting in a disruptions of the workflow. ECF No. 18-1 at

12

78. The VE testified that such an individual would not be able to maintain competitive employment. ECF No. 18-1 at 79.

Fisher's attorney also asked the VE what percentage of the time that individual would be able to get away with responding inappropriately to supervisors and still keep a job. ECF No. 18-1 at 79. The VE did not have any information or data that would classify that particular activity and could not give any type of percentage of time that would be appropriate. ECF No. 18-1 at 79. Fisher's attorney then asked the VE to assume that person has a limited ability to accept instructions and respond appropriately to criticism from supervisors, where they were responding inappropriately 10 % of the time when criticized. ECF No. 18-1 at 79. The VE responded that any employee, who consistently fails to respond to employers' criticism, directions, or instructions, on an ongoing basis with any level of frequency, would not be able to maintain employment. ECF No. 18-1 at 79-80.

### C. ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Fisher: (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process

ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 514 U.S. 1120 (1995) (citing *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. *See Greenspan*, 38 F.3d at 237. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. *See Greenspan*, 38 F.3d at 237. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. *See Greenspan*, 38 F.3d at 237.

In the case at bar, Fisher has not engaged in substantial gainful activity since May 26, 2016, and his disability insured status expired after March 31, 2019. ECF No. 18-1 at 24. The ALJ found that Fisher has severe impairments–cervical degenerative disc disease; left knee osteoarthritis; colon adenocarcinoma; scalp hematoma; headache; hypertension; and history of seizure–but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1. ECF No. 18-1 at 25. The ALJ also found Fisher has the residual functional capacity to perform light work except: he can only occasionally kneel, stoop, crouch, crawl, and climb ramps and stairs; he can never climb ladders, ropes, or scaffolds; and he can never be exposed to unprotected heights or dangerous

machinery. ECF No. 18-1 at 25. Fisher was closely approaching advanced age on the alleged disability onset date, and had at least a high school education. ECF No. 18-1 at 28.

The ALJ found there are jobs that Fisher can perform that exist in significant numbers in in the national economy–price marker, DOT 209.874-034 (light,[1] SVP 2,[2] 273,000 jobs in the national economy); fitting room attendant, DOT 299.677-010 (light, SVP 2, 214,000 jobs in the national economy); and housekeeper, DOT 323.687-014 (light, SVP 2, 136,000 jobs in the national economy). Because Fisher could work, the ALJ concluded that Fisher was not under a disability, as defined in the Social Security Act ("SSA") from May 26, 2016 through the date of his decision on April 9, 2019. ECF No. 18-1 at 28-29.

## II. Law and Analysis

### A. Scope of Review

In considering Social Security appeals, a court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists in the record to support the Commissioner's decision and whether there were any prejudicial legal errors.

---

[1] The Social Security Administration classifies the physical exertional requirements of jobs as sedentary, light, medium, heavy, and very heavy. *See* 20 C.F.R. § 404.1567.

[2] SVP, or Specific Vocational Preparation, refers to the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a particular occupation. *See* DOT, App. C (II) @ https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC.

*See McQueen v. Apfel*, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. *See Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision, but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. *See Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. *See Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987); *Dellolio v. Heckler,* 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than a court. *See Allen v. Schweiker,* 642 F.2d 799, 801 (5th Cir. 1981); *see also Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

A court does have authority, however, to set aside factual findings that are not supported by substantial evidence and to correct errors of law. *See Dellolio*, 705 F.2d at 125. But to make a finding that substantial evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no

contrary medical evidence." *See Johnson v. Bowen*, 864 F.2d 340 (5th Cir. 1988); *Dellolio*, 705 F.2d at 125.

### B. Substantial evidence supports the ALJ's conclusion that Fisher was not disabled between May 26, 2016 and April 9, 2019.

Fisher contends on appeal that he his homeless, he suffered 3 seizures and a stroke in 2014, then lost his job, and he had cancer.

Fisher alleges he suffered a stroke and seizures in 2014. However, those medical issues were considered in his prior application for benefits. ECF 18-1 at 37-46. Fisher was released to light duty work on January 9, 2015 (ECF No. 18-1 at 267), and a brain MRI in 2016 did not show any residuals from a seizure or stroke (ECF No. 18-1 at 294), although Fisher's doctors always gave him seizure precautions to follow in the workplace. ECF No. 18-1 at 294. The current applications concern only the period from May 26, 2016 through April 9, 2019. There is no evidence that Fisher has had another seizure (or stroke) since 2015. Furthermore, after Fisher fell and suffered a scalp laceration in 2016, an MRI of his head again showed no abnormalities. ECF No. 18-1 at 294. Therefore, Fisher was not disabled by seizures or a stroke.

Fisher has hypertension. However, there is no evidence that his hypertension is not controlled by medication. There is, however, some evidence that

Fisher is not fully compliant with his blood pressure medication.[3] ECF No. 18-1 at 458.

Nor is it established in the medical records that Fisher currently has colon cancer. Fisher had a malignant polyp in his sigmoid colon that was removed. A subsequent colonoscopy did not reveal another polyp. Fisher was scheduled for another colonoscopy and a PET scan in November 2018, but there are no medical records showing those occurred or their results.

Finally, Fisher had abnormal blood work in September 2018 and an abnormal thyroid study in January 2019. ECF No. 18-1 at 556-59. There is nothing in the administrative record that interprets or otherwise follows up on those results.

If Fisher develops further medical records that indicate a new or worsening health problem, he may file a new application for benefits. The subsequent deterioration of a claimant's previously non-disabling condition, after the date of the Commissioner's decision, may form the basis of a new claim. *See Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985).

Fisher has not carried his burden of proof. Therefore, to the extent Fisher claims the ALJ erred in concluding he is not disabled by residuals from his seizures, high blood pressure, and his previous head injury, substantial evidence supports the ALJ's/Commissioner's findings that Fisher is not disabled.

---

[3] If a claimant does not follow the prescribed treatment without a good reason, he will not be found disabled. 20 C.F.R. § 404.1530(b).

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that the final decision of the Commissioner be AFFIRMED and that Fisher's appeal be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers at Alexandria, Louisiana on this __10th__ day of April, 2022.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge